UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SANDRA QUESNOY,

                    Plaintiff,                        3:10-cv-01538-ST

        v.                                   OPINION AND ORDER

STATE OF OREGON, DEPARTMENT OF
CORRECTIONS; CAPTAIN HEPLER, in his
individual capacity; MARY RAINES, in her
individual capacity; and ELIZABETH SUZANNE
SAZIE, M.D., in her individual capacity,

                    Defendants.

_____

STEWART, Magistrate Judge:

      After a jury trial, this court entered a Judgment (docket # 120) on February 3, 2012,

awarding plaintiff $50,000.00 as follows:  (1) $35,000.00 against defendant Oregon Department

of Corrections ("ODOC") on her disability discrimination claims under Title II of the Americans

with Disabilities Act, 42 USC § 12132 ("ADA"), and the parallel Oregon law, ORS 659A.142,

for failing to provide her with a walker while she was housed in disciplinary segregation;

(2) $5,000.00 against defendant Mary Raines for violating her First Amendment rights by failing

to provide information concerning the disciplinary sanction; and (3) $10,000.00 against

defendant Mary Raines for violating her due process rights under the Fourteenth Amendment by

failing to provide medical records or assistance for the disciplinary hearing.

1 OPINION AN D ORDER

As the prevailing party, plaintiff is entitled to recover her fees and costs pursuant to the

fee-shifting provisions of 42 USC §§ 1988(b) and 2000e-5(k), as well as ORS 659A.885(1).

Accordingly, she has timely filed a Motion for Attorney Fees and Costs (docket # 121), seeking

an award of attorney fees in the sum of $184,635.00 plus an additional $10,257.50 incurred in

preparing the Reply Memorandum, for a total of $194,892.250, and a Bill of Costs (docket

# 122) in the sum of $13,356.90.  Defendants concede that plaintiff is the prevailing party, but

dispute the amount that should be awarded.  For the reasons set forth below, this court awards

plaintiff $119,572.50 for her attorney fees and $2,397.70 for her costs.

## I.    Motion for Attorney Fees

### A.    Legal Standard

The Ninth Circuit has adopted the "lodestar" method to for calculating attorney fees.

That calculation multiplies a reasonable hourly rate by the number of hours reasonably expended

in the litigation.  *Fisher v. SJB-P.D. Inc.*, 214 F3d 1115, 1119 (9th Cir 2000) (ADA claim), citing

*Hensley v. Eckerhart*, 461 US 424, 433 (1983).  A "strong presumption" exists that the lodestar

amount represents a "reasonable fee."  *Pennsylvania v. Delaware Valley Citizens' Council for

Clean Air,* 478 US 546, 565 (1986) (internal quotations omitted).  However, the court may adjust

the lodestar figure if various factors overcome the presumption of reasonableness.[1]  *Hensley*, 461

US at 433-34; *Morales v. City of San Rafael*, 96 F3d 359, 363-64 (9th Cir 1996).

---

[1]  The court may adjust the lodestar figure on the basis of the *Kerr* factors:  (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Morales*, 96 F3d at 363 n8. citing *Kerr v. Screen Guild Extras, Inc.*, 526 F2d 67, 70 (9th Cir

"The extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 USC § 1988." *Hensley*, 461 US at 440.  In a case of partial or limited success, a court must consider:  (1) whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded;" and (2) whether "the plaintiff achiev[ed] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id* at 434.  Deductions based on limited success are within the discretion of the district court.  *Watson v. County of Riverside*, 300 F3d 1092, 1096 (9th Cir 2002).

### B.    Hourly Rates

In determining a reasonable attorney fee under 42 USC § 1988, this court must look at the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 US 886, 895 n11 (1984).  The relevant community "is one in which the district court sits." *Davis v. Mason County*, 927 F2d 1473, 1488 (9th Cir), *cert denied*, 502 US 899 (1991).  These rates are set by determining what a lawyer of comparable skill, experience, and reputation could command in the relevant community.  *Blum*, 465 US at 895 n11.  In order to meet this burden of proof, the fee applicant must "produce satisfactory evidence - in addition to the attorney's own affidavits" that the requested rates are prevailing market rates under this standard.  *Id*.

Plaintiff seeks $315.00 per hour for attorney Katelyn S. Oldham and $75.00 per hour for paralegal Cheryl Rodriguez.  Defendant does not contest the $75.00 hourly rate for the paralegal which is well within a reasonable range for the Portland area.  *See Sterling Savings Bank v. Sequoia Crossing, LLC,* 2010 WL 3210855, at *8 (D Or Aug 11, 2010).

---

1975), *cert denied,* 425 US 951 (1976).  Many of the *Kerr* factors have been subsumed in the lodestar approach.  *Cunningham v. County of Los Angeles*, 879 F2d 481, 487 (9th Cir 1988), *cert denied,* 493 US 1035 (1990).  Moreover, the court should consider the factors established by *Kerr*, but need not discuss each factor.  *Sapper v. Lenco Blade, Inc.*, 704 F2d 1069, 1073 (9th Cir 1983).

With respect to the prevailing market rate for services rendered by herself, Oldham has

submitted a declaration detailing her qualifications. Oldham has been practicing law in Oregon

since 2002 and primarily represents plaintiffs in civil rights suits, including prisoners against

ODOC and its employees. Oldham Decl., ¶¶ 3, 7. Oldham's standard hourly rate is $275.00

which she asserts is reasonable when compared to the average billing rates per hour of Portland-

area attorneys as set forth in the Oregon State Bar 2007 Economic Survey. *Id,* ¶¶ 13-14 & Ex. 4,

pp. 7-50. The OSB 2007 Economic Survey shows the median hourly billing rate is $225.00 for

Portland-area attorneys in practice for 10 years, as well as for Portland-area attorneys who

represent plaintiffs in civil litigation (excluding personal injury). *Id,* Ex. 4, pp. 37-38, 40. For

both categories, a rate of $315.00 per hour is between the 75th percentile ($290.00 and $294.00)

and the 95th percentile ($334.00 and $350.00). *Id.* Oldham also points to an OSB survey in

March 2008 on behalf of the Civil Rights Section which concludes that an hourly rate of $300-

324.00 was common among civil rights practitioners. *Id,* ¶ 20 & Ex. 4, p. 5; Snyder Decl., ¶ 13.

However, this survey data is based on only 55 responses of the possible 271 lawyers all over

Oregon practicing in multiple fields with varying years of experience. Oldham Decl., Ex. 4, p. 1.

Oldham justifies an enhancement to her standard hourly rate based on the time and labor

required to litigate this reasonably complicated civil rights case for more than two years which

involved cross-motions for summary judgment addressing qualified immunity and ADA issues

and which culminated in a four-day jury trial. This is the fourth prisoner's rights case she has

handled. Oldham Decl., ¶ 7. Oldham also points out that she has taken an active role in several

bar committees relating to civil rights and disability law and written and spoken on these topics.

*Id,* ¶¶ 8, 9, 11. She does not advertise, but relies on referrals from her peers, including opposing

counsel, and from past clients and other professionals.  *Id.*  She also mentors newer attorneys and occasional interns.  *Id,* ¶ 11.  She characterizes this case as "extremely difficult" with "complex legal hurdles" which presented a significant risk because plaintiff was a prisoner and did not suffer economic damages or permanent harm.  *Id,* ¶ 20.  In addition, as a sole practitioner, Oldham had to turn down other work.  *Id*, ¶ 19.

Regarding the prevailing market rate for similar services by lawyers of reasonably comparable skill, experience and reputation, plaintiff has submitted declarations from other civil rights and employment law litigators.  Beth Creighton has been practicing law in Oregon since 1997 and focuses on civil rights litigation, including employment discrimination.  Creighton Decl., ¶¶ 1-8.  She is active in various bar committees, has been a frequent speaker, provides consultations, and often receives referrals.  *Id,* ¶¶ 9-12.  She states that her current hourly rate is $350.00 which is a "premium rate" for a specialist in employment law and civil rights litigation.  *Id,* ¶ 13.  She fails to explain why less than two years ago in June 2010 her rate was only $300.00 according to the declaration she submitted in *Rogers v. Univ. of Or.,* Case No. 07-6032-TC (docket # 297), ¶ 13.  She opines that Oldham's normal hourly rate of $275.00 is low and that $315.00 is more in line with a reasonable rate for Oldham.  *Id*, ¶ 18.

David Paul has been litigating over 25 years in Oregon with an emphasis on public interest cases against "better funded opponents."  Paul Decl., ¶¶ 1-6.  He has taught classes, published articles, served on various committees, and been co-counsel recently with Oldham on one civil rights case.  *Id,* ¶¶ 7-9, 12.  For a lawyer of Oldham's "excellent ability and experience," he opines that $275.00 per hour "is more than reasonable."  *Id,* ¶ 14.

Lastly, the declaration from Judy Snyder (Oldham's former employer) states that she has practiced general litigation for 38 years, has made numerous presentations, published many articles, and has been very active in various bar activities.   Snyder Decl., ¶¶ 1-7.  Her current billing rate is $400.00 per hour.  *Id,* ¶ 12.  Based on her review, it is her opinion that Oldham "has demonstrated the competency, skills and experience to be awarded attorney fees at the rate of $275.00 per hour."  *Id,* ¶ 11.  She also states that an enhanced hourly rate of $315.00 is reasonable based on the risk of a contingency fee case, an hourly rate of $400.00 for a bankruptcy attorney and two plaintiff's contingent fee lawyers in the Portland area, and the 2008 survey cited by Oldham.  *Id,* ¶¶ 12-13.

Defendants do not contest an hourly rate of $275.00 for Oldham, but object to enhancing that rate to $315.00.  This court agrees that an enhancement is not warranted.  First of all, $315.00 is far higher than dictated by the OSB 2007 Economic Survey to which this court accords significant weight as a starting point to determine a reasonable rate.  Although this survey has not been updated since 2007, upward adjustments for inflation for the past four years would not increase the median hourly rate of $225.00 by more than about $25.00.  Second, Mr. Paul opines that $275.00 per hour is "more than reasonable" for Oldham and does not urge awarding any higher rate.  Although Ms. Creighton supports the enhanced hourly rate of $315.00, she has about five years more experience than Oldham and only charged $300.00 per hour in June 2010.  Absent an explanation as to why her rate is now considerably higher, this court sees no reason to award Oldham more per hour than Ms. Creighton charged less than two years ago.  Ms. Snyder is considerably more experienced than Oldham and justifiably charges much more per hour.  However, it is notable that she provides no examples of comparable

lawyers in the Portland area to Oldham and relies on suspect 2008 survey data. Third, the enhanced hourly rate is more than this court has awarded recently to other more experienced civil rights litigators. *See e.g.*, *Taekker v. Potter,* Case No. 08-83-HA, 2010 WL 2382558 (D Or June 14, 2010) (reducing requested $350.00 hourly rate to $300.00 for attorney with 36 years of experience); *Orme v. Burlington Coat Factory of Or., LLC,* Case No. 07-859-MO, 2010 WL 1838740 (D Or May 3, 2010) (reducing requested $375.00 hourly rate to $275.00 for attorney with 27 years of experience); *Hamrick v. Aqua Glass, Inc.,* Case No. 07-3089-CL, 2010 WL 935478 (D Or March 12, 2010) (awarding $275.00 per hour to attorney with 11 years of experience); *Kerpan v. Biscuits Café, Inc.*, No. 08-CV-811-ST, 2009 WL 1813147 (D Or June 23, 2009) (awarding $250.00 per hour to attorney with nine years of experience). Finally, this case was not so factually or legally complex as to require a significant premium. This case was complex primarily because plaintiff elected to allege as many claims against as many defendants as possible, rather than attempting to narrow them down.

After a full and careful consideration of the relevant factors, this court concludes that Oldham is entitled to an hourly rate of $275.00.

### C.    <u>Number of Hours Expended</u>

Plaintiff's initial request for attorney fees is based on 548.2 hours incurred by Oldham (including 18.7 hours to prepare this motion and Bill of Costs) and 48.8 hours incurred by the paralegal from September 4, 2009, through February 17, 2012. Oldham Decl., ¶¶ 12-15. In addition, plaintiff seeks attorney fees for 37.3 hours incurred by Oldham in March 2012 to prepare the Reply Memorandum and supporting documents. Supp. Oldham Decl., ¶ 3 & Ex. 1.

Defendants argue that the court should reduce the number of hours incurred by about 80% to account for plaintiff's limited success.

### 1.  <u>Unsuccessful Claims</u>

The first step requires the court to determine whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." *Sorenson v. Mink,* 239 F3d 1140, 1147 (9th Cir 2001), quoting *Hensley,* 461 US at 434. "If unrelated, the final fee award may not include time expended on the unsuccessful claims." *Thorne v. City of El Segundo,* 802 F2d 1131, 1141 (9th Cir 1986). "[C]laims are *unrelated* if the successful and unsuccessful claims are 'distinctly different' *both* legally *and* factually." *Webb v. Sloan,* 330 F3d 1158, 1169 (9th Cir 2003) (emphasis in original), quoting *Schwarz v. Sec'y of Health and Human Serv*., 73 F3d 895, 901-02 (9th Cir 1995). In contrast, claims are related if they "involve a common core of facts *or* are based on related legal theories." *Id* at 1168 (emphasis in original; citations omitted). "[T]he test for relatedness of claims is not precise," but "the focus is on whether claims arose out of a common course of conduct." *Id,* citing *Schwarz,* 73 F3d at 903. "[T]he court need not compensate an attorney for efforts expended on extraneous and dismissed claims that did not contribute to the victory." *Schwarz,* 73 F3d at 903.

In her original Complaint, plaintiff named six defendants (ODOC, M. Ward, Capt. Hepler, J. Ridgely, NP, Mary Raines, RN, and Dr. Elizabeth Sazie) and alleged claims for: (1) retaliation in violation of the First Amendment against four defendants (Dr. Sazie, Ridgely, Hepler and Raines); (2) violation of the Eighth Amendment, equal protection and due process rights claims against five defendants (Dr. Sazie, Ridgely, Ward, Hepler and Raines); (3) intentional infliction of emotional distress ("IIED") against four defendants (Dr. Sazie,

Ridgely, Hepler and Raines); and (4) violation of the ADA and the Oregon disability statute,

ORS Ch. 659A, against ODOC for failing to:  (a) supply a walker in the DSU; (b) allow

additional time to provide a urine sample; (c) provide records or assistance for the disciplinary

hearing; and (d) remove the disciplinary sanction.

The First Amended Complaint dropped four of the § 1983 claims and one common law

claim against Ridgely and Ward.  The court granted summary judgment to all defendants on the

IIED and the equal protection claims.  On the remaining five claims that proceeded to trial, the

jury found in favor of Hepler and Dr. Sazie on the § 1983 claims and in favor of ODOC on the

disability discrimination claims[2] based upon failing to provide additional time for a urine sample,

provide assistance at the disciplinary hearing and remove the disciplinary sanction.  Plaintiff

succeeded only against Raines on the due process and retaliation claims involving the

disciplinary hearing and only against ODOC for disability discrimination on the single issue of

not providing a walker in the DSU.

None of the unsuccessful claims are related factually or legally to the successful

disability discrimination claims.  To succeed on the successful disability discrimination claims,

plaintiff had to prove that she was entitled to, but not provided, a walker in the DSU because she

was not a security threat and no medical assessment was made that her health would be

jeopardized with a walker in her cell.  In contrast, almost all of the evidence introduced at trial

was unrelated to that claim.  The course of conduct at issue on the § 1983 claims against

Dr. Sazie, Hepler, Ridgely and Ward sought to remedy their individual conduct which had

---

[2]  Although the jury returned a verdict only on the ADA claim, the parties agreed that the court would enter an identical verdict on the Oregon disability discrimination claim.

nothing to do with the walker,[3] and the IIED claim was related to the other "outrageous" conduct described in Complaint, not to ODOC's failure to provide a walker.  Other than the conduct all occurring during the same time period and at the same locale of plaintiff's incarceration at the Coffee Creek Correctional Facility, the claims do not arise out of a common core of facts or a common course of conduct.

Similarly, the other successful retaliation and due process allegations against Raines involving her conduct in connection with disciplinary hearing had nothing to do with the retaliation and other constitutional violations alleged against Hepler and Dr. Sazie.  Hepler, a guard, allegedly retaliated by failing to provide requested personal health items (walker, eyeglasses and pillow) and berating plaintiff.  Dr. Sazie, a physician, allegedly retaliated by not providing proper medicine.  These allegations are in no way connected with Raines's failure to provide information to help plaintiff defend herself against the disciplinary proceeding.  They may all be § 1983 claims, but they do not arise out of a common core of facts or a common course of conduct.  From the legal standpoint, the successful First Amendment claim against Raines is distinctly different from the unsuccessful Eighth Amendment, equal protection and due process claims alleged against the other defendants.  And no other claim involved plaintiff's due process rights at the disciplinary hearing, which is a separate and distinct legal claim.

Thus, the number of hours must include only time spent on prosecuting the disability discrimination claims, the due process and retaliation claims against Raines.  Plaintiff has the

---

[3]   The unsuccessful § 1983 claims against Hepler all involved his denial of a walker to plaintiff while in segregation, among other acts.  However, it was undisputed that plaintiff had no walker in segregation.  The disputed issue was why.  Whether she was entitled to one as a disabled individual was the subject of her disability discrimination claims.  That issue had nothing to do with Hepler's motive which was the disputed issue on the § 1983 claims for violating the First, Eighth and Fourteenth Amendments.

obligation to provide proper information for the court to determine the number of hours reasonably expended in pursuit of the successful and related claims.

Defendants contend that the time records submitted are not sufficiently detailed to apportion the time spent by Oldham between the successful and unsuccessful claims. In an effort to apportion time between the successful and unsuccessful claims, defendants' counsel has reviewed Oldham's time records and prepared an exhibit highlighting the time entries that are "clearly attributable" to both successful (43.3 hours) and unsuccessful claims (33.2 hours). Smith Decl., ¶ 2 & Ex. 1. According to his calculation (which plaintiff disputes), that leaves 471.7 hours undetermined as to how they should be apportioned.

The hours requested by plaintiff do exclude time spent on the IIED claim and the spoliation theory. Oldham Decl., ¶ 17 n2 & Ex. 2. However, Oldham concedes that she did not determine minute-by-minute how much time was spent addressing each claim or defendant. Instead, she argues that the work performed in pursuit of those unrelated claims is inseparable from the general litigation tasks required to push the entire case forward.

To the extent that the time was spent on general litigation tasks applicable to all claims, it is recoverable. However, the unsuccessful claims did not play an important role in plaintiff's partial success and were not highly entangled with the successful claims. To the contrary, the inclusion of dismissed defendants and unsuccessful claims served to increase the amount of unproductive time devoted to this case. Plaintiff's attorney proceeded at her peril by not heeding the Supreme Court's directive that billing records be kept "in a manner that will enable a reviewing court to identify distinct claims." *See Hensley,* 461 US at 437. Had the billing records been more precise, then it would have been possible to at least parse the disability discrimination

claims against ODOC from the other claims and defendants.  Because that was not done, an

across-the-board percentage cut is necessary to reflect plaintiff's partial success on the claims

overall.  This approach comports with the use of such a formula when the court is unable to

identify the precise amount of time incurred on the unsuccessful and unrelated claims.  *Schwartz*,

73 F3d at 905, distinguishing *McGinnis v. Kentucky Fried Chicken of Cal.,* 42 F3d 1273,

*amended and superseded,* 51 F3d 805, 808 (9th Cir 1994).

### 2.    Level of Success

"If it is impossible to isolate the truly unrelated claims from those related claims, the

district court should instead reflect that limited success in [the] second step" of the *Hensley*

analysis. *Webb,* 330 F3d at 1169 (citation omitted).  That second step is determining whether

"the plaintiff achieve[d] a level of success that makes the hours reasonably expended a

satisfactory basis for making a fee award."  *Sorenson,* 239 F3d at 1147, quoting *Hensley,* 461 US

at 434.  The heart of this inquiry is whether plaintiff's "accomplishments in this case justify the

fee amount requested."  *Thorne,* 802 F2d at 1142 (citation omitted).   "Where a plaintiff has

obtained excellent results, his attorney should recover a fully compensatory fee."  *Hensley,* 461

US at 435.  A plaintiff may obtain excellent results without receiving all the relief requested.  *Id*

at 435 n11.

Although plaintiff did not succeed on all of her claims, she did recover significant

damages.  The jury awarded her all of the amount requested ($35,000.00) on the one ADA claim

against ODOC, a quarter of the $20,000.000 requested on the First Amendment claim against

Raines, and two-thirds of the $15,000.000 requested on the Fourteenth Amendment claim against

Raines.  She did fall far short of her goal with respect to damages sought in her closing argument

by losing her other claims requesting $50,000.00 against ODOC, $30,000.00 against Hepler, another $10,000.00 against Raines, and $10,000.00 against Dr. Sazie. Thus, she recovered less than one-third ($50,000.00) of the total damages sought ($170,000.00), but, as the prevailing party, is also entitled to recover her attorney fees and costs.

This is not a minor victory considering her unsuccessful attempt to resolve this case before trial. Plaintiff owes the State of Oregon over $316,000.00 in restitution for the crime that resulted in her incarceration. Since she is on a fixed income of social security disability benefits, she pays only $50.00 per month towards her restitution. Supp. Oldham Decl., ¶ 12. Before trial, the State of Oregon offered her a partial satisfaction of her debt in the amount of $175,000.00. *Id*, ¶ 11; Smith Decl., Ex. 2. Plaintiff was unwilling to accept that offer unless the State of Oregon also paid her attorney fees and costs incurred to that date in the sum of $100,000.00 or in an amount to be determined by the court. *Id.* Needless to say, due to the large amount of restitution owed, the State of Oregon was disinclined to pay plaintiff any cash. To receive a cash payment, it calculated that plaintiff would have to recover a judgment of $416,000.00. At this point, the State of Oregon believes that all of the judgment is subject to garnishment to pay plaintiff's restitution. However, plaintiff contends that her position post-trial is significantly better than had she accepted the State of Oregon's settlement offer because she will be able to pay her costs and avoid garnishment of at least $10,000.00 of the judgment. Supp. Oldham Decl., Ex. 3. Although the settlement offer would have erased a greater part of her restitution obligation, it is unlikely that she will ever pay it in full with accrued interest, whether reduced by $175,000.00 or $50,000.00.

Although plaintiff may have been forced to trial due to the nature of her restitution obligation, this court is reluctant to view her victory primarily from the standpoint of attorney fees and costs. Instead, for the purpose of the fee-shifting statutes, it must view how much of the time and effort was reasonably incurred to achieve the partial victory.

Given plaintiff's limited success, defendants suggest that the court award hours in the same percentage as the percentage of defendants against whom plaintiff recovered (2/6 = 33%), of successful versus unsuccessful claims (3/25 = 14%), or of the amount of trial time used to present evidence on the successful claims (about 25%). The Ninth Circuit has approved the use of "a mathematical formula, even a crude one, to reduce the fee award to account for limited success." *Schwartz*, 73 F3d at 904-05 (affirming 75% reduction of hours based on the success of only one of four claims); *Harris v. Marhoefer*, 24 F3d 16, 17 (9th Cir 1994) (affirming 50% reduction based on the number of successful versus unsuccessful claims); *Harris v. McCarthy*, 790 F2d 753, 757-59 (9th Cir 1986) (holding that district court did not abuse discretion by awarding fees-on-fees in the same 11.5% ratio it had awarded merits fees).

Here a reduction is mandated because the initial lodestar figure for the commingled time yields "an excessive amount [ ]" given plaintiffs' partial success. *See Hensley,* 461 US at 436. More particularly, plaintiff is seeking $154,415.00 in fees (excluding time incurred on this motion and Bill of Costs), consisting of 548.2 attorney hours at $275.00/hour and 48.8 paralegal hours at $75.00/hour. That is an excessive amount, given that substantial time necessarily was expended on plaintiff's core claim of her inability to provide a timely urine sample on which she did not prevail against any of the defendants.

This court recognizes that many tasks performed by Oldham were devoted to the litigation as a whole, such as conducting the initial factual investigation, drafting tort claims notices, communicating with plaintiff and opposing counsel, responding to discovery requests, preparing for and arguing motions, preparing for and taking depositions, and preparing for and engaging in trial. Most witnesses and defendants were involved in more than one claim. However, some discovery, depositions and witnesses related only or primarily to unsuccessful claims (*e.g.* Corporal Nancy Murphy, Dr. Sazie, Michele Nielsen, RN) and could have been avoided had the unrelated claims not been part of the case. In contrast to the 80% reduction strongly urged by defendants, this court concludes that, based on its intimate knowledge of this case, a one-third reduction is appropriate. It adequately accounts for the fact that a significant portion of the time would have been incurred even if plaintiff had pursued only her successful claims and provides a generous compensatory fee for plaintiff's victory. Therefore, the number of hours incurred by Oldham (excluding time spent on this motion which is discussed separately below) is reduced by one-third from 548.2 to 365.5 hours.

Given that the paralegal hours pertain primarily to organizing documents in response to discovery requests and providing assistance at trial, all of which was necessary to prevail on the successful claims, they are reasonable and not subject to any reduction.

### 3.   **Attorney Fee Petition**

Plaintiff also seeks attorney fees expended to prepare and litigate this motion and Bill of Costs. This request includes 18.7 hours spent by Oldham to prepare the fee petition and supporting documents, plus another 37.3 hours to prepare the reply memorandum and supporting documents, for a total of 56 hours. Oldham Decl., ¶ 22 & Ex. 5; Supp. Oldham Decl., Ex. 1.

Work performed on a motion for attorney fees is compensable under 42 USC § 1988(b).  *Clark v. City of Los Angeles*, 803 F2d 987, 992 (9th Cir 1986).  Although defendants do not contest the inclusion of hours for the attorney fee petition, this court has an independent obligation to determine that the number of hours is reasonable.  After carefully reviewing the time records, this court finds that the hours expended by Oldham are high, but not inherently unreasonable given the nature of defendants' objections and the issues presented.

However, plaintiff also seeks reimbursement for the time spent by her experts to provide their supporting opinions:  4.9 hours at $350.00 per hour for Beth Creighton ($1,715.00) and 3.5 hours at $400.00 per hour for Judy Snyder ($1,400.00).   As discussed below, expert witness fees are not recoverable as part of attorney fees in this case under 42 USC § 1988(c).  In addition, these expert witness fees are not part of the "litigation expenses" recoverable under 42 USC § 12205 or "reasonable attorney fees at trial" recoverable under ORS 659A.885(1).  Therefore, the court declines to award those expert fees as part of plaintiff's attorney fee award.

### D.    Conclusion

Based on the above, plaintiff is awarded attorney fees calculated as follows:

| | | |
|---|---|---|
| Oldham: | 365.5 hours @ $275.00/hour = | $100,512.50 |
| | 56.0 hours @ $275.00/hour = | 15,400.00 |
| Paralegal: | 48.8 hours @ $ 75.00/hour = | 3,660.00 |
| TOTAL: | | $119,572.50 |

## II.    Bill of Costs

The Bill of Costs itemizes costs consisting of $2,965.70 for deposition appearance fees and transcripts for 11 witnesses and $10,391.20 for two expert witness fees.

16 - OPINION AND ORDER

A.    **Depositions**

Pursuant to 28 USC § 1920(2), a prevailing party may recover as costs the "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case."  The cost of taking depositions and obtaining deposition copies is properly taxed if introduced into evidence or used at trial for impeachment or cross-examination.  *Indep. Iron Works, Inc. v. U. S. Steel Corp.*, 322 F2d 656, 678 (9th Cir), *cert denied*, 375 US 922 (1963).

Of the appearance and deposition fees of the 11 witnesses listed in the Bill of Costs, defendants specifically object to $568.00 for the deposition transcript of Joe Giblin, who was Nurse Raines's supervisor.  Because his proposed testimony concerned unrelated employee discipline, this court granted Defendants' Motion In Limine to exclude his testimony.  Therefore, Giblin did not testify at trial, and his deposition transcript was not introduced as evidence or otherwise used at trial.

However, the cost of a deposition not used at trial may be taxed if taking the deposition was reasonable as part of the pretrial preparation of the case, rather than for the convenience of counsel, or if the deposition was required for a dispositive motion.  *Id* at 678-79*; see also Principe v. McDonald's Corp.*, 95 FRD 34, 37 (ED Va 1982).  Plaintiff did submit Giblin's deposition testimony in opposition to defendants' summary judgment motion to show that ODOC was concerned about Raines's truthfulness and retaliatory behavior.  Oldham Decl., ¶ 7 & Ex. D (docket # 61); Plaintiff's Opposition to Defendants' Motion for Summary Judgment (docket # 52), pp. 17-18.  The issue is whether plaintiff required this deposition testimony to respond to summary judgment.  Even though defendants did not move to strike Giblin's testimony at that time, his testimony was not admissible to oppose summary judgment for the

same reason that it was not admissible at trial.  Moreover, it was unnecessary for resolution of the issues presented on summary judgment.  Therefore, this court declines to award $568.00 sought for the cost of Giblin's deposition.

**B.      Expert Witness Fees**

The Bill of Costs includes expert witness fees of $10,391.20 for Daniel K. Friedman, M.D., and Michele Nielsen, R.N.  Absent "express statutory authority" for shifting expert witness fees, reimbursement for such fees is limited by 28 USC §§ 1821 and 1920.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 US 437, 439 (1987).  Under those statutes, the only costs recoverable for witnesses, including experts, is a $40.00 per day attendance fee and mileage. Thus, as part of the Bill of Costs, the amount sought for expert witness fees is not recoverable.

However, plaintiff argues that expert witness fees are recoverable as part of her attorney fee award under both the ADA and 42 USC § 1988.  She is wrong with respect to 42 USC § 1988.  In 1991, the Supreme Court held that § 1988 does not authorize the shifting of expert witness fees to the losing party.  *West Virginia Univ. Hosp., Inc. v. Casey*, 499 US 83 (1991). After *Casey*, Congress amended § 1988 to allow the court, "in its discretion," to award expert witness fees "in any action or proceeding to enforce a provision of section 1981 or 1981a of this title."  42 USC § 1988(c).  This amendment does not include claims brought under § 1983. *Ashker v. Sayer,* No. 05-03759 CV, 2011 WL 825713, at *4 (March 7, 2011); *Ruff v. County of Kings,* 700 F Supp2d 1225, 1243 (ED Cal 2010); *Agster v. Maricopa County*, 486 F Supp2d 1005, 1019 (D Ariz 2007).  Thus, § 1988 does not allow an award of expert witness fees to plaintiff for prevailing against Raines on her § 1983 claim.

18 - OPINION AND ORDER

In contrast, the ADA specifically authorizes an award of "litigation expenses," including expert witness fees, to the prevailing party.  42 USC § 12205; *Lovell v. Chandler,* 303 F3d 1039, 1058 (9th Cir 2002), *cert denied,* 537 US 1105 (2003).  Plaintiff maintains that the testimony of both Dr. Friedman and Nurse Nielsen were imperative to prove that plaintiff was an otherwise qualified individual with a disability under the ADA whom ODOC was required to accommodate.  Defendant disagrees, contending that neither witness had anything to say about the successful ADA claim.

Dr. Friedman, plaintiff's treating neurologist, testified as to her diagnosis, symptoms, prognosis, need for mobility devices, and urinary difficulties.  Plaintiff's inability to urinate on demand is unrelated to her successful ADA claim against ODOC for failing to provide a walker in segregation.  Thus, had plaintiff called Dr. Friedman only to testify as to her disability based on her urinary difficulties, she could not recover his fee under the ADA.  The issue is whether Dr. Friedman's testimony was necessary to prove that she was disabled based on her lack of mobility which relates to her successful ADA claim.  Defendants made it clear before trial that they would not contest that issue and instead would only contest that plaintiff was disabled under the ADA with respect to her urinary difficulties.  After all, it was undisputed that ODOC provided plaintiff a wheelchair when outside her cell and an aide due to her mobility issues.  Consequently, Dr. Friedman's testimony was not necessary to establish that plaintiff was disabled with respect to her successful ADA claim against ODOC for failing to provide a walker.  Thus, plaintiff may not recover an expert witness fee for Dr. Friedman ($1,700.00).

The testimony of Nurse Nielsen addressed the professional errors allegedly committed by Raines.  None of her testimony was relevant to proving any element of the successful ADA

claim against ODOC for failing to provide a walker.  Instead, it related only to the § 1983 claims or to the unsuccessful claims based on plaintiff's urinary difficulties.  Therefore, plaintiff may not recover an expert witness fee under the ADA for Nurse Nielsen ($8,691.20).

Plaintiff also prevailed on her ORS 659A.142 disability discrimination claim and presumably seeks expert witness fees under ORS 659A.885(1) which allows the court to award "costs and reasonable attorney fees" to the prevailing party.  However, that statute does not specifically allow an award of expert witness fees or even "litigation expenses" as under the ADA.  Although ORS 20.107(1) allows an award of "expert witness fees reasonably and necessarily incurred" in any civil action "based on a claim of unlawful discrimination," it does not include disability discrimination in its definition of "unlawful discrimination." ORS 20.107(4).  In any event, such an award is clearly within this court's discretion.  Exercising that discretion, this court finds no reason to award expert witness fees for Dr. Friedman or Nurse Nielsen.

### C.   <u>Conclusion</u>

Plaintiff may recover those costs itemized in her Bill of Costs for deposition appearance fees and transcripts for all witnesses except Giblin.  Thus, the requested sum of $2,965.70 is reduced by $568.00 to $2,397.70.

In addition, expert witness fees are disallowed as part of the Bill of Costs and plaintiff's attorney fee request.

///

///

///

**<u>ORDER</u>**

For the reasons stated above, plaintiff's Motion for Attorney Fees and Costs (docket

# 121) is GRANTED in the reduced sum of $119,572.50, and the Bill of Costs (docket # 122) is

GRANTED in the reduced sum of $2,397.70.

DATED this 6th day of April, 2012.


s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge