UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SANDRA QUESNOY,

    Plaintiff,

v.

STATE OF OREGON, DEPARTMENT OFCORRECTIONS; CAPT. HELPER, in his individual capacity; MARY RAINES, in her individual capacity; and ELIZABETH SUZANNE SAZIE, M.D., in her individual capacity,

    Defendant.

Case No. 3:10-CV-01538-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Before the court is plaintiff Sandra Quesnoy's Motion for Supplemental Award of Attorney's Fees and Award of Additional Interest. For the reasons set forth below, plaintiff's motion is granted in the amount of $112,422.36.

## BACKGROUND

Plaintiff suffered a violation of her civil rights while incarcerated for a property crime at Coffee Creek Correctional Institution in 2009. She attained partial victory at trial in February 2012 on claims under 42 USC § 1983, the Americans with Disabilities Act, and Oregon disability laws, and the jury awarded her $50,000. Judgment, ECF #120. The court then

awarded plaintiff's attorney, Katelyn S. Oldham (Oldham), $121,970.20 in attorney's fees and costs, compensating Oldham at an hourly rate of $275 per hour. Opinion and Order 16, 21, ECF #136; Supplemental Judgment, ECF #137.

Because plaintiff owed the State of Oregon substantial restitution on her criminal conviction, the Oregon Department of Revenue (ODR) filed a writ of garnishment for the Judgment. ODR also issued a writ of garnishment for the Supplemental Judgment, against Oldham's objection. Oldham filed a notice of attorney-fee lien with this court and challenged both writs through a state administrative proceeding.

An administrative law judge (ALJ) rejected plaintiff's challenges and entered a Final Order in ODR's favor. Plaintiff appealed the Final Order to the Oregon Court of Appeals. The American Civil Liberties Union (ACLU) and the Oregon Trial Lawyers Association (OTLA) filed *amicus* briefs in her support. Several months later, the ALJ *sua sponte* withdrew the Final Order. The ALJ thereafter issued a Final Order on Reconsideration, finding that the prior order was partly in error and that ODR's attempt to garnish the Supplemental Judgment violated the Supremacy Clause of the United States Constitution.

Plaintiff continued to challenge the garnishment against the Judgment in the Oregon Court of Appeals. On June 28, 2017, the Oregon Court of Appeals issued an opinion in *Quesnoy v. Department of Revenue*, 286 Or. App. 359 (2017), affirming that garnishment.

In September 2017, plaintiff filed a fee petition and bill of costs with the Oregon Court of Appeals seeking attorney's fees and costs related to the garnishment of the Supplemental Judgment. She also filed a "Motion to Reopen Case to File Supplemental Fee Petition and Cost Bill and to Address Interest Rate Owed" in this case. ECF #140. The state filed an opposition to

the fee petition, asserting that no statutory or other legal basis allowed for such an award. On February 22, 2018, the Oregon Court of Appeals denied plaintiff's request for attorney's fees.

This court granted plaintiff's motion and re-opened this case in May 2018, finding that an award for attorney's fees expended in collecting a judgment for fees awarded under § 1983 was proper. Order 5-6, ECF #150; *see also Spain v. Mountanos*, 690 F.2d 742, 746 (9th Cir. 1982) ("We agree with the Fifth Circuit that a state cannot frustrate the intent of section 1988 by setting up state law barriers to block enforcement of an attorney's fees award."). As this court previously held, time spent by counsel in establishing the right to attorneys' fees is compensable. *See* Order 5-7, ECF #150. Plaintiff subsequently filed a supplemental fee petition relating to recovery of the Supplemental Judgment and seeking additional interest for the time that ODR withheld the Supplemental Judgment. ECF #153.

## DISCUSSION

### I. Postjudgment Interest on the Supplemental Judgment

Defendants remitted $121,970.20, the entirety of the Supplemental Judgment, and $2,895.48 in interest,[1] on April 3, 2014, 728 days after the court awarded the Supplemental Judgment. Plaintiff claims she is owed additional interest for the nearly two-year delay. Defendants agree, but dispute which interest rate applies. Plaintiff argues that the Oregon state law interest rate of 9% applies and that she is owed an additional $18,995.48. *See* ORS 82.010(2). Alternatively, she argues that if the federal interest rate of 1.8% applies, then she is still owed an additional $1,483.42.

---

[1] Defendants do not try to explain how they came up with this amount, but as discussed below, applying the federal interest rate under 28 USC § 1961 results in a larger amount than was remitted.

Plaintiff contends that the state interest rate applies because (1) ODR initiated garnishment under state laws and procedures and no federal court was involved in those proceedings, and (2) the nature of the garnishment is congruent with cases analyzing interest under ORS 80.010(1)(a), (b). These arguments are inapposite.

Under federal law, "[i]nterest *shall* be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest *shall* be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding." 28 USC § 1961(a) (emphasis added). "Interest *shall* be computed daily to the date of payment . . . and *shall* be compounded annually." 28 USC § 1961(b) (emphasis added).

Here, the Supplemental Judgment is clearly a "money judgment in a civil case recovered from a district court." Thus, the federal interest rate applies. The court entered judgment on April 6, 2012. Opinion and Order, ECF #136; Oldham Decl. ¶ 15, ECF #155. The applicable rate at the time was 1.8% per annum. *See* Board of Governors of the Federal Reserve System, Selected Interest Rates (Weekly) – H.15, at 1 (April 2, 2012), https://www.federalreserve.gov/releases/h15/20120402/h15.pdf. Plaintiff is therefore entitled to recovery of interest at a rate of 1.8%, computed daily to the date of payment, and compounded annually.

Plaintiff's reliance on *In re Nucorp Energy, Inc.*, 902 F.2d 729, 734 (9th Cir. 1990), and its progeny is misplaced, as those cases concern the selection of interest rates relating to prejudgment interest, not postjudgment interest. *E.g.*, *id.* ("The correct rate of prejudgment interest in federal court depends on the nature of the claims."); *In re Zenovic v. Malcolm Crump*, No. AP 13-90218-LT, 2017 WL 431400, at *7 (B.A.P. 9th Cir. Jan. 31, 2017), *aff'd*, 727 F. App'x 369 (9th Cir. 2018) (discussing prejudgment interest); *S.E.C. v. Platforms Wireless Int'l*

*Corp.*, 617 F.3d 1072, 1099 (9th Cir. 2010) (same). The mandatory nature of § 1961(a) requires this court to apply the 1.8% interest rate to postjudgment interest. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 840 (1990) ("Where Congress has not seen fit to provide for a higher rate of interest with respect to antitrust suits and has set a definite interest rate that governs this litigation, the courts may not legislate to the contrary.").

Plaintiff contends that applying the federal interest rate is like giving Oregon an interest-free loan or common-law conversion. This argument, however, has already been foreclosed by the Ninth Circuit in *Van Asdale v. Int'l Game Tech.*, 763 F.3d 1089, 1093 (9th Cir. 2014). There, the Ninth Circuit "held that the § 1961 rate *does* reflect market rates and thereby 'fully compensates' aggrieved parties. Thus, the postjudgment interest rate established in § 1961 is sufficient to make the [plaintiff] 'whole.'" *Id.* (quotation and alteration omitted) (emphasis in original).

Plaintiff argues she is owed $1,483.42[2] in additional interest. ECF #154, at 13. However, she short-changes herself because this amount does not account for compounding interest annually, as required by 28 USC § 1961(b). The formula for computing compound interest is $P(1+r)^t$. Here, P = $121,970.20, r = 0.018, and t=728/365, and compound interest equals $4,418.09. Defendants have paid $2,895.48 in interest already. Thus, they owe the remainder of $1,522.61 in postjudgment interest.[3]

///

---

[2] It appears plaintiff computed simple interest using the formula P(rt), where P = $121,970.20, r = 0.018, t = 728/365. Simple interest equals $4,378.90. When the $2,895.48 in interest that defendants have paid is subtracted from $4,378.90, it equals what plaintiff claims she is owed, $1,483.42.

[3] $4,418.09 – $2,895.48 = $1,522.61

5 – OPINION AND ORDER

## II. Attorney's Fees for Work Related to Collections

### A. Applicable Law

The court calculates attorney's fees using the lodestar method, i.e., multiplying the number of hours worked by a reasonable hourly rate. *See Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (holding "the lodestar approach" is "the guiding light" when determining reasonable fees). In determining the "reasonable hourly rate to use for attorneys and paralegals[,]" the court looks to the "prevailing market rates in the relevant community." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (citations and internal quotation marks omitted). The court excludes hours "that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

"[T]here is a strong presumption that the lodestar is sufficient." *Perdue*, 559 U.S. at 556. "[A] multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quotations and citations omitted). "Adjustments [to the lodestar amount] must be carefully tailored . . . and [made] only to the extent a factor has not been subsumed within the lodestar calculation." *Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 704 (9th Cir. 2009) (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008)). The party seeking fees bears "the burden of documenting the appropriate hours expended in the litigation, and [is] required to submit evidence in support of those hours worked." *United Steelworkers of Am. v. Ret. Income Plan For Hourly-rated Emps. Of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (quotations omitted).

B.    **Application**

1.    **Reasonable Hourly Rate**

To determine the reasonable hourly rate, this court must look to the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant community "is one in which the district court sits." *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir), *cert den.*, 502 U.S. 899 (1991). This court uses the most recent Oregon State Bar Economic Survey as a benchmark for comparing an attorney's billing rate with the fee customarily charged in the locality. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F.Supp.2d 1228, 1244 (D. Or. 2013).

Oldham seeks an hourly rate of $325 per hour. She was admitted to the Oregon State Bar in 2002. Oldham Decl. ¶ 7. According to the Oregon State Bar's 2017 Economic Survey, the median hourly rate for Portland-area attorneys with 16–20 years of experience is $325 per hour. 2017 Oregon State Bar Economic Survey, Table 36, ECF #155-1. The mean hourly rate of $334 per hour is only $9 dollars more than the median rate. *Id.* Attorneys in the 25th percentile earn $250 per hour and attorneys in the 75th percentile earn $400 per hour. *Id.*

Oldham's requested hourly rate falls squarely within the range for attorneys with similar years of experience. Moreover, two experienced attorneys who litigate civil-rights cases in Portland have submitted declarations attesting that the requested rate is reasonable. *See* Steinman Decl. ¶¶ 7-9; Walsh Decl. ¶¶ 9-11. Further still, Oldham has tried numerous cases, has litigated cases against state agencies, and regularly works on and argues appeals. *See* Oldham Decl. ¶¶ 3-10, 12-14. Oldham makes presentations and speaks at lawyer and non-lawyer conferences and meetings, is an equity partner at the Tedesco Law Group, and has considerable expertise in agency law, constitutional law, and other complex areas of law. Considering

Oldham's qualifications, skill, experience, and the prevailing market rates of comparable Portland-area attorneys, $325 per hour is a reasonable rate.

Defendants contend that the reasonable hourly rate for Oldham's work in this case has already been decided—at $275 per hour—because the court's prior order awarded attorney's fees at that rate. Defendants assert that, while some time has passed since that decision issued, the legal issues have narrowed, and the administrative and appellate issues addressed are less demanding than trying a case before a jury. ECF #160, at 2.

Defendants provide no support for their contention that Oldham's work in the administrative and appellate proceedings, which attracted *amicus* briefs from both the ACLU and OTLA, was less demanding and somehow deserves a lower hourly rate. Time is time—whether speaking with a client, researching an issue, or trying a case to a jury. Further, this argument discounts the fact that Oldham has gained six more years of experience since the court's previous order was issued. Thus, the requested $325 per hour is a reasonably hourly rate for Oldham's work in this litigation.

## 2. Number of Hours Worked

Oldham seeks fees for 347.9 hours of work. Reply 9, ECF #161. While not the model of clarity, Oldham's records sufficiently document hours expended and establish entitlement to a fee award. *Hensley*, 461 U.S. at 437.

Defendants contend the records are inadequate because (1) the invoice and due dates are inaccurate, (2) Oldham did not send plaintiff invoices, (3) the descriptions in some entries are identical and the entries thus appear to be duplicative, (4) Oldham used different billing systems, (5) there are hand-written notes and modifications to billing entries, (6) some records contain no running totals, (7) it is unclear who performed the work, and (8) the records appear in are variety

of formats. Defs' Response at 5-6. Defendants conclude that "[n]o client would ever pay a bill so lacking in clarity." *Id.* at 6. However true, that is not the relevant standard. None of these objections pertain to Oldham's substantive work.

This was a contingency-fee case for an indigent prisoner; plaintiff was not billed for Oldham's work. As such, invoices and due dates are inapplicable. Moreover, the descriptions for each entry contain the date the work was performed. Oldham was the only attorney to work on this case, and she tracked her time contemporaneously throughout the litigation regardless of where she was employed. Oldham Decl. ¶ 16. She used Quickbooks when employed at Crispin Law Offices and then Excel at Tedesco Law Group until Tedesco adopted another billing system. Oldham Reply Decl. ¶¶ 4-7. In preparing her fee petition, Oldham "scrutinized [her] time records and zeroed out time claimed that related to stand-alone theories, was unsuccessful, or that that did not advance the case or issues related to the recovery of fees in the case." Oldham Decl. ¶ 18. Oldham did this manually (with a pen) because she did not have access to prior billing software and it would have been more time consuming to recreate the records. Oldham Reply Decl. ¶ 3. Each entry contains the date, a short description of the work completed, and the amount of time spent in six-minute (0.1 hour) increments. The records contain billing entries for tasks pertinent to the case and in increments that are not excessive for the tasks involved. As such, Oldham's records sufficiently support an award of attorney's fees.

Moreover, Oldham originally sought fees for 288.80 hours of work before remittal, but after considering the few substantive objections raised by defendants, struck an additional 44 hours of work that did not lead to successful outcomes from her request, and now seeks fees for 244.30 hours. Reply 7; Oldham Reply Decl. ¶ 8. For this reason, this court can confidently conclude Oldham has exercised billing judgment in that she has made "a good faith effort to

exclude from a fee request hours that are excessive, redundant or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 424.

Additionally, Oldham seeks compensation for 26.7 hours spent preparing her fee petition. Oldham Decl. ¶ 28. About half of that briefing relates to the argument that the Oregon interest rate should apply to the fee award—an unsuccessful theory. Thus, some reduction is necessary to account for her limited success. However, about half of that discussion also relates to defendants' failure to calculate the federal interest rate correctly. Thus, only a 25% reduction of these hours is appropriate. *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 905 (9th Cir. 1995) (holding that resorting to a crude mathematical formula "to reduce the fee award to account for limited success" is appropriate). A 25% reduction of 26.7 hours (6.67 hours) results in a total of 20.3 hours to prepare the fee petition.

For the reasons discussed above, plaintiff is entitled to attorney's fees for 341.23 hours of work. The lodestar is calculated by multiplying the number of hours worked by a reasonable hourly rate of $325. Thus, the lodestar is $110,899.75.[4]

The final question is whether either party has overcome the strong presumption that the lodestar is sufficient, and if so, whether the court should enhance or reduce the lodestar amount. Neither party argues that this is a rare or exceptional case where the lodestar should be modified. *See Van Gerwen*, 214 F.3d at 1045. As such, the court finds that the lodestar is sufficient.

### III. Total Award

Plaintiff is entitled to $110,899.75 in attorney's fees and $1,522.61 in interest, for a total award of $112,422.36.

///

---

[4] 341.23hrs*$325/hr = $110,899.75.

**ORDER**

For the reasons set forth above, plaintiff's Motion for Supplemental Award of Attorney's Fees and Award of Additional Interest (ECF #153) is granted in the amount of $112,422.36.

IT IS SO ORDERED.

DATED October 17, 2018.

                                                                       /s/Youlee Yim You
                                                                      Youlee Yim You
                                                                      United States Magistrate Judge